**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
OWEN P. ANDERSON,

                            Plaintiff,                    **MEMORANDUM**
                                                             **AND ORDER**
       - against -

                                                               08-CV-0341 (DGT) (JO)

ALEXANDER KAPLAN, et al.,

                            Defendants.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

       On November 4, 2008, I convened a conference to discuss the status of discovery in this case and to resolve an issue relating to the representation of each party that had been the subject of several letters submitted to the court. In scheduling the conference, I ordered as follows: "The plaintiff must appear in person, as must each attorney having primary responsibility for the representation of any party or any party seeking to withdraw as counsel of record." When the conference began, I learned that plaintiff Anderson did not plan to attend, and that attorney Adam Garth – a member of the law firm seeking to represent the plaintiff, and the same attorney who had previously advised the plaintiff to skip a scheduled medical examination – had instead sent an associate from his firm, Carmine Goncalves, in his place. I therefore proceeded with the attorneys of record, made certain rulings summarized below, and then suspended the conference until later in the afternoon, when the plaintiff and attorney Garth arrived in response to my renewed order. I now summarize the rulings I made at the conference.

A. Representation Of The Plaintiff And Related Issues

1. Background

As of the start of the conference, the plaintiff's counsel of record was Catherine Montiel of the firm of Miller, Montiel & Strano.[1] Also participating at various points in the conference on November 4, 2008, and purporting to represent the plaintiff, were two attorneys from the Law Offices of Michael S. Lamonsoff, PLLC: associate Carmine Goncalves and partner Adam Garth; neither had entered a notice of appearance before the conference or at any time during the preceding week when the events precipitating the conference occurred.

During the conference, Mr. Garth ultimately confirmed that he had previously spoken to the plaintiff about the subject matter of this case without securing the consent of the plaintiff's counsel, despite knowing the plaintiff to be represented by counsel. He further confirmed that he advised the plaintiff unilaterally to cancel a previously scheduled medical examination that was part of the discovery process in this case without consulting the plaintiff's counsel of record, the defendants' counsel, or the court. The examination was later rescheduled; however, the defendants have had to secure the services of a different examiner as a result of the delay.

2. Costs

The plaintiff's unilateral decision to cancel his examination at the last minute – an action taken as a result of the conversation that he had with Mr. Garth with no notice to the plaintiff's counsel of record – has imposed burdens on the defendants. After giving the plaintiff's counsel

---

[1] The docket incorrectly reflect that attorney Mark J. Linder also serves as the plaintiff's counsel of record. In fact, Mr. Linder represented only former plaintiff Winston Williams, whose claims have long since been dismissed on consent. I respectfully direct the Clerk to correct the docket with respect to the status of Mr. Linder and Mr. Williams.

2

an opportunity to be heard, I determined that such costs should properly be borne by the plaintiff. I therefore direct the defendants to submit a bill of any costs associated with the plaintiff's cancellation of the medical examination. I leave it to the plaintiff and Mr. Garth to work out who, as between the two of them, should properly bear the ultimate burden of reimbursing the defendants for the costs resulting from the plaintiff's decision to follow the advice of an attorney other than his counsel of record in this case.

3. Plaintiff's Representation

Notwithstanding the fact that the plaintiff has harmed his own interests by following Mr. Garth's advice to cancel the medical examination, the plaintiff stated explicitly on the record that he wishes to be represented in this case by Mr. Garth's firm. I therefore directed Messrs. Goncalves and Garth, as incoming counsel for the plaintiff, to file their respective notices of appearance today, and to register to receive notification of all filings in this case via the court's ECF docketing system. Once they have done so, I will grant Ms. Montiel's motion for leave to withdraw. In the interim, I direct Ms. Montiel to provide a copy of this order to her successors as plaintiff's counsel.

4. Ethical Considerations

Based on the instant facts, I am concerned that Mr. Garth violated an ethical rule when he "communicate[d] on the subject of the representation with a party [he then knew] to be represented by a lawyer in th[is] matter [without] the prior consent of the lawyer representing such other party [and without being] authorized by law to do so." New York Lawyer's Code of Prof'l Responsibility DR 7-104(A), *codified at* N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.35(A); *see also* Loc. Civ. R. 1.5(b)(5) (incorporating New York's code of professional

3

responsibility). To be sure, a represented party must be free to explore the possibility of engaging substitute counsel if she is dissatisfied for any reason with her current representation, and such explorations will often require communication between the party and an attorney who does not yet (and may never) represent her about the subject matter of her case. In most cases, of course, such communications can take place on notice to the party's existing counsel, and the latter attorney would generally have no good reason to withhold consent for such communications.[2] Moreover, I recognize that the text of the disciplinary rule at issue is amenable to a reading that would not apply in the circumstances of this case.

Nevertheless, an interpretation of the scope of the disciplinary rule that excludes the instant facts is plainly subject to abuse. By failing to communicate with Ms. Montiel, despite knowing that the plaintiff was represented in a pending lawsuit, Mr. Garth advised the plaintiff to take an action that was inconsistent with the plaintiff's discovery obligations and has, as a result, harmed the plaintiff's interests in this case.

I am confident that Mr. Garth did not set out either to compromise the plaintiff's legitimate interests in this litigation or to act unethically. On the other hand, I cannot fathom

---

[2] A client who wished to explore a change of counsel might well be reluctant to have that fact made known to her attorney during the initial stages of such exploration. But the attorney to whom she turned as a possible replacement would of course be able to explain the dangers implicit in providing advice that might conflict with the advice the client's counsel of record had already provided and in acting without the full information about the client's case that only counsel of record would have. The new attorney could also explain that any ethical attorney would of course put aside personal feelings and act in the best interests of the client, even if that meant transferring the representation to another attorney. In short, it seems unlikely that, in most civil cases that have reached the stage of active litigation, a client's perceived need to explore the possibility of retaining substitute counsel would be incompatible with providing notice to the attorney of record in pending litigation.

4

how an attorney could so cavalierly advise a party to disregard a discovery proceeding without consulting either the attorney representing that same party who had been involved in arranging the proceeding, the attorney for the opposing party, or the court. It may be that the only recourse to the plaintiff harmed by such inappropriate advice is to seek relief against the lawyer who gave it. But it is also apparent that the harm results from precisely the kind of communication that the no-contact disciplinary rule is designed to prevent: a communication by a lawyer with a party who already has counsel about the subject matter of that party's representation without securing the input of the lawyer with the duty to protect the party and the information necessary to do so. To the extent that the disciplinary rule permits such contacts, lawyers serving as counsel of record for parties need to know that so that they can provide appropriate advice to their clients; in particular, attorneys need to provide clients with guidance about how to seek new counsel, should the need arise, without harming their own interests. To the extent the rule forbids such communications, lawyers in Mr. Garth's position need clear guidance to avoid ethical violations. Either way, the matter is one that would benefit from clarification by the relevant state and federal disciplinary committees, and I will therefore refer this matter to each.[3]

---

[3] In *Grievance Comm. for Southern Dist. of New York v. Simels*, 48 F.3d 640, 646 (2d Cir. 1995), the court observed that "the interpretation of DR 7-104(A)(1) as it applies to federal criminal law practice should be and is a matter of federal law." In the context of a criminal case in which the represented party seeks to obtain new counsel for purposes of cooperating with the prosecution, and in which revealing that fact to counsel of record might endanger the client, seeking consent would be impractical. Whether the disciplinary rule would require such consent, or whether instead the communications needed to explore the change of counsel would implicitly be considered authorized by law, is a matter not now before me. However, to the extent that the principle recognized in *Simels* – namely, that the federal courts have an independent interest in interpreting state disciplinary rules and are not bound by state court interpretations of those rules – would apply equally to federal civil law, the disciplinary committee of this court may or may not reach the same conclusion as any state disciplinary authority. Accordingly, referral to both committees would appear likely to produce the most complete guidance for attorneys and courts.

B. Other Matters

1. Representation Of The Defendants

I granted attorney David Stecklow's motion to be relieved as counsel of record for the defendants.

2. Discovery Schedule.

In light of the discovery delays caused by the plaintiff's unilateral and untimely decision to cancel the medical examination, I will enter an amended case management and scheduling order that extends all remaining pretrial deadlines by 30 days. There will be no further adjournments absent a timely showing of extraordinary circumstances; the fact that the parties have recently decided to retain new counsel will not be deemed sufficient reason to adjourn any deadline.

3. Production Of The Plaintiff's X-Rays

The parties' attorneys will confer to identify the relevant x-rays of the plaintiff that are to be produced in discovery, and the plaintiff shall ensure that all such relevant x-rays are produced to the defendants' counsel no later than November 7, 2008. If the x-rays are not timely produced as required, I will entertain an application under Federal Rule of Civil Procedure 37 to exclude all of the plaintiff's medical evidence.

**SO ORDERED.**

Dated: Brooklyn, New York
November 4, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge